■ SUNAN FOOD CORPORATION, Petitioner, v NEW YORK STATE LIQUOR AUTHORITY, Respondent. — Proceeding pursuant to CPLR article 78 to review a determination of the New York State Liquor Authority dated September 10, 1980, made after a hearing, that petitioner had violated section 65 of the Alcoholic Beverage Control Law in that it sold alcoholic beverages to a minor and suspended petitioner's license for a period of 20 days, 10 days to be served forthwith and 10 days to be deferred. Petition granted, determina-

tion annulled, on the law, without costs or disbursements, and the charges against petitioner are dismissed. Petitioner was charged by respondent with a violation of section 65 of the Alcoholic Beverage Control Law, viz., that petitioner sold beer to one James Reilly, a person under the age of 18. The hearing officer's finding that the charges were sustained was adopted by the respondent State Liquor Authority and a penalty was imposed. Petitioner commenced this proceeding to review the determination, alleging it was not supported by substantial evidence (CPLR 7803, subd 4). The petition is granted. The two witnesses for the respondent were police officer Sergeant Garry Leach and James Reilly. Leach testified that at about 7:40 P.M. on October 31, 1979 he saw a fellow and girl "leave the front of [petitioner's] Supermarket". The fellow (Reilly) had a paper bag in his arm which Leach thought might contain beer so he asked him what he had. Reilly said it was beer that he had purchased in the market for $3.40. There was no sales slip. He agreed to go back into the store with the officer to identify the cashier whom he knew as a student at the high school he attended, although he did not know her name. Reilly also told the officer (in a signed statement) that his birthdate was November 22, 1961. Inside the store, Reilly was not able to identify the cashier who had been working the register at which he thought he had purchased the beer nor was he able to identify any other cashier as the one who had sold him the beer. Reilly's testimony was that his birthdate is November 22, 1963. (He had lied to the officer.) He and Lisa Burke went to the market together, but Reilly went into the store alone to buy the beer with $5 Burke gave him. He did not remember what he paid for the beer, but he testified that what he told the officer on the day in question was correct. Three witnesses testified for petitioner to the effect that no beer had been sold to Reilly. A finding is supported by the evidence "only when the evidence is so substantial that from it an inference of the existence of fact found may be drawn reasonably. A mere scintilla of evidence sufficient to justify a suspicion is not sufficient to support a finding upon which legal rights and obligations are based. That requires 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' " *(Matter of Stork Rest. v Boland,* 282 NY 256, 273-274). Applying this principle to the present case, we conclude that the inference drawn by the hearing officer that Reilly purchased the beer was not reasonable. The finding is not supported by substantial evidence. Aside from the fact that the. store manager and the security guard, both of whom knew Reilly from previous incidents in the store, testified on behalf of petitioner that they had not seen Reilly in the store that evening until he arrived with Sergeant Leach, Leach's testimony never placed Reilly coming out of the store. Leach testified that he saw a fellow and girl "leave the front of the *** Supermarket". On cross-examination he testified that Mr. Reilly and Miss Burke "came from the front door, came out the front door of the store". "Out the front door" apparently meant out of the open vestibule doorway, not out of the door actually leading into the store, for Leach also testified that he did not see Reilly in the store; he saw Reilly "at the door, coming out through the door, just right in front of the door there, it's like a little — [vestibule]", and upon being recalled, he testified that "They were at the front door when [he] saw them". Even when Reilly's testimony is added to Leach's testimony the fact of Reilly's purchase of the beer is not made out. Despite Reilly's testimony that he had indeed purchased the beer, he could not identify the cashier who sold him the beer and he misstated the price of the beer which he had purportedly purchased just a few minutes earlier. Reilly did not indicate to Leach that he might not be able to identify the

cashier because he had not taken a good look at her. Rather, Reilly told Leach he had recognized the cashier from school. The girl who had been working the register identified by Reilly as the one he used did not, however, attend Reilly's school; she did not recognize Reilly and Reilly did not identify her. Moreover, as noted earlier, Reilly could not identify anyone else as having sold him the beer either. With respect to the price Reilly told Leach he paid for the beer, the store manager and the cashier as well as the security guard, testified that the particular beer that Reilly was carrying sold for $1.99, not $3.40. In fact, the store carried no beer that sold at the price Reilly had stated. The only reasonable inference to be drawn from the record as a whole is that Lisa Burke not Reilly purchased the beer. Lisa Burke was not, however, called by the respondent. Her testimony was essential to support Reilly's testimony that they went to the store together, whereupon he went inside alone and purchased the beer, using a five-dollar bill that she gave him. The failure of the respondent to call Lisa Burke must, under the circumstances, be viewed against its position that petitioner sold Reilly the beer (see Richardson, Evidence [Prince, 10th ed], § 92). And, although a sale to Lisa Burke would also have been a violation of the same regulation prohibiting sale of alcoholic beverages to a minor, that is not the charge that was made. Hopkins, J. P., Titone, Lazer and Cohalan, JJ., concur.